UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| AMY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:15CV00014 AGF |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Amy Davis was not disabled, and thus not entitled to Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

**BACKGROUND**

Plaintiff, who was born on November 10, 1976, filed her application for benefits on September 2, 2011, alleging a disability onset date of August 18, 2011, due to fibromyalgia, degenerative disc disease, depression, anxiety, and migraines. After Plaintiff's application was denied at the initial administrative level, she requested a hearing before an Administrative Law Judge ("ALJ"). Such a hearing was held on August 12, 2013, at which Plaintiff and a vocational expert ("VE") testified. By decision dated September 17, 2013, the ALJ found that Plaintiff had the residual functional capacity

("RFC") to perform certain jobs that the VE testified a person with Plaintiff's RFC could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. Plaintiff's request for review by the Appeals Council of the Social Security Administration, accompanied by additional evidence, was denied on January 22, 2015. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record. More specifically, Plaintiff argues that the ALJ committed reversible error by not according proper weight to the opinions of two examining state agency medical consultants (Karen A. MacDonald, Psy.D., who performed a psychological evaluation in September 2011; and Gary W. Rucker, D.O., who performed a physical examination in November 2011), and of Plaintiff's treating physician (Gene Smith, D.O.). Plaintiff also argues that the ALJ erred in failing to account for Plaintiff's obesity in the RFC; improperly assessing the credibility of Plaintiff's hearing testimony; failing to credit three third-party statements; relying on Plaintiff's poor work history in assessing her credibility; and relying on the VE's testimony that a person with Plaintiff's RFC could perform certain jobs. In sum, Plaintiff argues that the combination of her impairments clearly leave her unable to work on a sustained basis. She asks that the Court reverse the Commissioner's decision and remand the case with directions to award Plaintiff benefits, or with directions for further proceedings.

2

**Medical Record**

The Court adopts Plaintiff's Statement of Facts (Doc. No. 17-1) as amended by Defendant (Doc. No. 21-1), along with Defendant's Statement of Additional Facts (Doc. No. 21-2). Together, these statements provide a fair description of the medical record. Specific facts will be discussed as needed to address the parties' arguments.

**ALJ's Decision (Tr. 20-33)**

The ALJ found that Plaintiff had the following severe impairments: herniated nucleus pulposus, status post-surgical intervention, lumbago, morbid obesity, bipolar disorder, and posttraumatic stress disorder. The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that equaled the severity of a deemed-disabling impairment listed in the Commissioner's regulations. The ALJ then determined that Plaintiff had the RFC to lift up to ten pounds occasionally; stand and/or walk for two hours in an eight-hour day; sit for six hours in an eight-hour day with normal work breaks and the ability to sit and stand at will; occasionally climb ramps and stairs, balance, stoop, crouch, and crawl; adapt to routine changes and sustain a normal work schedule and tolerate occasional contact with others, but would do best if allowed to work independently with only casual interactions required. In addition, Plaintiff was limited to simple work.

In arriving at this RFC, the ALJ reviewed Plaintiff's hearing testimony and the record evidence as to Plaintiff's physical and psychological conditions. The ALJ stated that she considered Plaintiff's obesity within the functional limitations in the RFC. With

respect to Plaintiff's back pain, the ALJ noted that Plaintiff's post-surgery treatment for back pain, and post-surgery examinations, did not support a finding that the pain was disabling. The ALJ pointed to, for example, a normal neurological and musculoskeletal examination, with normal range of motion, dated December 23, 2011.

Turning to Plaintiff's mental impairments, the ALJ found that Plaintiff's mental impairments, singly and in combination, did not satisfy the criteria of Listing 12.04 (affective disorders) or Listing 12.06 (anxiety-related disorders). Based on an examination of the record, including Plaintiff's testimony, the ALJ found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, and pace. The ALJ stated that a review of the record showed that Plaintiff had not received psychiatric treatment consistent with disabling conditions, as treatment consisted almost exclusively of medication management by her primary care physician. The ALJ noted the lack of any documentation that Plaintiff was ever refused more specialized treatment for any reason, including insufficient funds.

The ALJ then explained the weight she afforded opinion evidence in the record. She stated that she afforded the November 17, 2011 opinion of examining consultant Dr. Rucker "some weight." Dr. Rucker had opined, following a physical examination, that Plaintiff was too overweight (5' 8" and weighing 361 lbs.) "to withstand physical activity long enough to sustain a job." (Tr. 417.) The ALJ stated that she took this opinion into account in limiting Plaintiff to sedentary work. The ALJ found that the letter from

4

Plaintiff's treating physician Dr. Smith, dated October 11, 2011, six months after Plaintiff had back surgery (a lower lumbar decompression), stating that Plaintiff was "unable to work due to recent back surgery" (Tr. 425), lacked probative value in determining Plaintiff's ongoing limitations.

And the ALJ afforded the September 28, 2011 opinion of examining consultant Dr. MacDonald "partial weight." Dr. MacDonald interviewed Plaintiff and conducted a Mini Mental Status Examination – 2nd ed., on which Plaintiff achieved a score of 40, reflecting "almost two standard deviations from the average means," and impairment in the work-related functions of auditory memory; recalling and following detailed instructions; concentration, attention, pace, and persistence; and social interaction and adaptation to environment. Dr. MacDonald diagnosed bipolar disorder, posttraumatic stress disorder, and a Global Assessment of Functioning ("GAF") score of 50,[1] and opined that Plaintiff was "incapable of tolerating normal external stress and vocational pressures" and that her concentration, persistence, and pace along with her ability to socially interact and adapt to her environment was impaired. (Tr. 388-89.) The ALJ believed that Dr. MacDonald's opinion that Plaintiff was unable to tolerate even normal stress and had a GAF of only 50

---

1   A GAF score represents a clinician's judgment of an individual's overall ability to function in social or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31 to 40 indicate impairment in reality testing or communication or "major" impairment in social or occupational functioning; scores of 41-50 reflect "serious" impairment in these functional areas; scores of 51 to 60 indicate "moderate" impairment; scores of 61 to 70 indicate "mild" impairment.

was inconsistent with the "longitudinal" evidence in the record which indicated a higher level of functioning with appropriate medication. For example, Plaintiff reportedly told Dr. MacDonald that she experienced hallucinations (Tr. 388-89), but no evidence of hallucinations was suggested by any of Plaintiff's treating sources. als

The ALJ gave "considerable weight" to the opinion of non-examining psychological consultant David Hill, Ph.D., who indicated on a checkbox form (Tr. 407-09) dated October 23, 2011, that Plaintiff's only mental limitations were moderate limitations in her ability to understand, remember, and carry out detailed instructions, complete a normal workday and workweek, and interact appropriately with the general public. Dr. Hill noted that he based his opinion on Plaintiff's Function Report. In that report dated August 9, 2011, Plaintiff wrote that she took care of her (14 year-old ) son, fed her pets, prepared sandwiches and simple dinners, and was able to dust, fold laundry, and load the dishwasher; but was no longer able "to keep her household and [herself] clean." (Tr. 245-55.) Dr. Hill added that Plaintiff was able to adapt to routine changes in a simple repetitive work environment.

The ALJ addressed the statements of Plaintiff's mother and two of Plaintiff's friends and found that they did not establish Plaintiff was disabled, because the declarants were not medically trained and were not disinterested parties, and "more importantly," the statements were not consistent with the observations of medical professionals and Plaintiff's reported daily activities. (Tr. 31.) The ALJ believed that Plaintiff's reported daily activities, including those noted on her Function Report and the additional activities

she testified to at the hearing (going shopping with a motorized cart, reading, watching television, socializing with friends and family, and driving short distances) were insistent with Plaintiff's allegations of debilitating conditions and undermined Plaintiff's credibility. The ALJ also pointed to Plaintiff's poor work history in discounting the full extent of her subjective complaints.

The ALJ found that Plaintiff was not disabled, relying on the VE's testimony that a person with Plaintiff's RFC and no work experience could work as a table worker, assembler, and lens-block gauger and that such jobs were available in the state and national economy in substantial numbers. The VE testified that, based on his 40 years' of experience "doing job analyses and working with employers," the base of available jobs would be eroded by 15% due to the need to sit/stand at will.

## **DISCUSSION**

### **Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (citation omitted). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent

positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the

claimant has the RFC to perform his past relevant work. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 2016 WL 3878219, at *3 (8th Cir. 2016).

If the claimant cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE or other similar evidence to meet the step five burden. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Weight Accorded to Medical Opinions**

As a non-treating examining source, Dr. Rucker's opinion was not entitled to as much weight as that of a treating source. *See* 20 C.F.R. § 416.927(c)(2)(i)(" When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). Here, the Court concludes that the ALJ afforded due weight to Dr. Rucker's opinion. Dr. Rucker indicated that Plaintiff had limited range of motion of her back. Accordingly, the ALJ limited Plaintiff's

RFC to only occasional stooping and crouching. Dr. Rucker noted that Plaintiff had difficulty getting up, so the ALJ limited her RFC to no kneeling. Dr. Rucker indicated that Plaintiff could not stand, lift, and carry continuously, and the ALJ included corresponding limitations in the RFC, restricting Plaintiff from lifting more than 10 pounds and providing that Plaintiff required the option to sit/stand at will. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (stating that the ALJ's finding that the plaintiff was limited to sedentary work was "in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating physician's] medical opinions").

As the ALJ found, and Defendant argues, Dr. Smith's statement that Plaintiff was unable to work at that time, is of little evidentiary value with respect to a continuing disability of a duration of at least 12 months. Furthermore, a physician's opinion that a claimant cannot be gainfully employed is not a medical opinion, but is an opinion on the application of the Social Security Act. This task is solely the responsibility of the ALJ. *Nelson v. Sullivan*, 946 F.2d 1314, 1316 (8th Cir. 1991).

**ALJ's Assessment of Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in finding that Plaintiff's testimony was not credible. Specifically, Plaintiff argues that the ALJ improperly evaluated Plaintiff's daily activities, and work history.

> The credibility of a plaintiff's subjective testimony is primarily for the Commissioner to decide, not the courts. If there are inconsistencies in the record as a whole, the ALJ may discount subjective complaints. The ALJ, however, must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. If an ALJ explicitly

> discredits testimony and gives legally sufficient reasons for doing so, the
> court will defer to the ALJ's judgment unless it is not supported by
> substantial evidence on the record as a whole.

*Lafferty v. Astrue*, 559 F. Supp. 2d 993, 1012 (W.D. Mo. 2008) (citations omitted)

Subjective complaints may not be evaluated solely on the basis of objective medical evidence or personal observations by the ALJ. In determining credibility, consideration must be given to all relevant factors, including the plaintiff's prior work record and observations by third parties and treating and examining physicians relating to such matters as plaintiff's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Here, the Court concludes that the ALJ gave valid reasons for discrediting Plaintiff's subjective complaints to the extent they suggested limitations beyond those accounted for in the ALJ's RFC. "A lack of work history may indicate a lack of motivation to work rather than a lack of ability." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Plaintiff's argument that she did not work for many years because she wanted to be a stay-at-home mother for her son is unavailing.

Plaintiff's daily activities, though limited, also support the ALJ's RFC. Plaintiff could prepare meals, perform household chores, use a computer, go shopping with a motorized cart, read, watch television, socialize with friends and family, and drive short distances. While such activities do not suggest that Plaintiff could perform strenuous

work, they are inconsistent with her purported inability to perform even a limited range of sedentary work. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (The ALJ's reasons for discounting Plaintiff's credibility were supported by substantial evidence when, among other factors, Plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart.").

**Third-Party Statements**

Plaintiff is correct that an ALJ is obligated to consider observations of third parties. 20 CFR § 404.1513(d)(4); *Willcockson v. Astrue*, 540 F.3d 878, 880–81 (8th Cir. 2008) ("[S]tatements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints[.]"). Here, with respect to the ALJ's rejection of the third-party statements in the record to the extent they suggested limitations beyond those accounted for in the ALJ's RFC determination, the Court agrees with Plaintiff that the fact that the declarants were not medically trained is not a valid reason for discounting their statements. *See Henn v. Colvin*, 967 F. Supp. 2d 1263, 1284 (N.D. Iowa 2013). Nevertheless, an ALJ may discount third-party testimony on the same grounds as he or she discounts a claimant's own testimony. *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998); *Sharkey v. Colvin*, No. C13-1037, 2014 WL 5286880, at *13 (N.D. Iowa Oct. 15, 2014). Indeed, even where the ALJ fails to explicitly address observations of a third party, remand is not required where the same evidence that supports discrediting the claimant's testimony also supports discrediting the third party's observations. *Young v.*

12

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). Here, that is not the case—the ALJ did explicitly address the third-party statements, and discredited them for mostly valid reasons, including that the declarants were Plaintiff's mother and friends, and those not disinterested parties. *See Henn*, F. Supp. 2d at 1284; *Sharkey v. Colvin*, 2014 WL 5286880, at *13. The Court finds no reversible error in the weight the ALJ accorded these statements.

**Plaintiff's Obesity**

The Eighth Circuit has held that "when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citation omitted). A claimant's obesity is not inconsistent with the ability to perform even the full range of sedentary work. *See, e.g., Thompson v. Astrue*, 226 F. App'x 617, 621 (8th Cir. 2007). Here, the ALJ's added limitations to the requirements for sedentary work adequately account for Plaintiff's obesity.

**Reliability of the VE's Testimony**

Plaintiff challenges the ALJ's reliance on the VE's testimony that the base of available unskilled simple sedentary jobs with only occasional contact with others would be eroded by only 15% due to the need of the worker to sit/stand at will. Plaintiff argues that the reliability of this testimony is questionable, at the least.

Social Security Rulings ("SSR") 83-12 and SSR 96-9p explain that where a claimant requires a sit/stand option, there will be an erosion of the unskilled sedentary

occupational base, and that in such cases, a VE should be consulted. Here a VE was consulted and directly addressed the erosion of the relevant occupational base. There is no reason to question the VE's basis for the opinion he offered. *See, e.g., Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628 (9th Cir. 2011) (affirming the denial of benefits where a VE testified that recommended jobs would allow for an at-will sit/stand option and noted that although the Dictionary of Occupational Titles did not discuss a sit/stand option, his determination was based on his own labor market surveys, experience, and research); *Devore v. Comm'r of Soc. Sec.*, No. 1:14-CV-00663-SAB, 2015 WL 3756328, at *4 (E.D. Cal. June 16, 2015) (holding that the ALJ did not err in relying on a VE's testimony that her erosion figures were based upon her professional opinion); *Whiting v. Comm'r of Soc. Sec*, No. 13-10313, 2013 WL 5595359, at *7 (E.D. Mich. Oct. 11, 2013) (affirming the denial of benefits where a VE testified that a claimant with a sedentary exertional capacity who must alternate sitting and standing "as needed" could perform certain identified jobs); *Burgess v. Astrue*, No. 2:073022 CMC-RSC, 2008 WL 4904874, at *5 (D.S.C. Nov. 13, 2008) (same).[2]

In sum, a review of the record convinces the Court that, although the record could support a different result, the ALJ's decision was "within the available zone of choice" and should not be disturbed.

---

2   Plaintiff's argument that the VE's testimony conflicted with the Dictionary of Occupational Title's definitions of surveillance system monitor, election clerk, and call out operator is misplaced, as the ALJ did not rely on the VE's testimony that these jobs would be available to a person with different limitations than those included in the RFC found by the ALJ.

# CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2016